IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEBORAH S. GROH, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 17-00741-CV-W-ODS |
| UNION PACIFIC RAILROAD COMPANY, et al., | ) |
| Defendants. | ) |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Pending is Defendants' Motion to Dismiss. Doc. #12. For the following reasons, Defendants' Motion to Dismiss is granted.

## I. BACKGROUND[1]

Plaintiffs filed a Petition in the Circuit Court of Jackson County on July 20, 2017. Doc. #1-2. Plaintiffs are landowners who own fee title in land adjacent to a railroad right-of-way that runs between Milepost 270.6 North of Greenwood, Missouri, and Milepost 288.3 in Jackson County, Missouri. Defendant Union Pacific Railroad Company ("Union Pacific") acquired an easement for railroad purposes over and through landowners' property. The rail line at issue is out of service, and has no customers.

In December 2015, Defendant Jackson County filed a Verified Notice of Exemption with the Surface and Transportation Board ("STB") to permit Jackson County to acquire from Union Pacific and operate, as Defendant Rock Island Corridor Authority ("RICA"), the rail line described above.[2] The STB granted the exemption, stating

---

[1] Unless otherwise noted, the facts contained in this section are derived from Plaintiff's Petition.
[2] Jackson County sought this exemption under 49 C.F.R. § 1150.31. *Jackson County, Mo. – Acquisition & Operation Exemption – Union Pac. R.R. Co.*, Fin. Dkt. No. 35982, 2015 WL 9672626, at * 1 n.1 (S.T.B. Jan. 8, 2016). A section 1150.31 exemption applies to all acquisitions and operations under 49 U.S.C. § 10901, and includes

Jackson County, doing business as RICA, will be the operator on the line.  *Jackson County, Mo. – Acquisition & Operation Exemption – Union Pac. R.R. Co.*, Fin. Dkt. No. 35982, 2015 WL 9672626, at * 1 n.1 (S.T.B. Jan. 8, 2016).  The exemption was served and published in the Federal Register, and scheduled to become effective on January 22, 2016.  *Jackson County, Mo. – Acquisition & Operation Exemption – Union Pac. R.R. Co.*, Fin. Dkt. No. 35982, 2016 WL 454035, at * 1 (S.T.B. Feb. 4, 2016).

In February 2016, the STB denied a motion to stay the effective date of the exemption filed by an entity not a party to this matter.  *Id.*  Accordingly, the exemption was effective immediately.  The STB stated Jackson County planned to use the rail line as a recreational trail and potentially for commuter rail service.  *Id.* at * 1-2.  In April 2016, Union Pacific, through a quit claim deed, transferred to Jackson County the 17.7 miles of rail line between Milepost 270.6 North of Greenwood, Missouri, and Milepost 288.3 in Jackson County.

Plaintiffs allege Defendants "improperly and illegally invaded and clouded Plaintiffs' fee ownership in their land associated with the right-of-way."  Plaintiffs claim Union Pacific abandoned the easement, and as a result, Plaintiffs maintain they regained the right to use and possess their property free of any easement.  Plaintiffs also allege Union Pacific was not authorized to transfer any interest to Jackson County.  They further allege "Defendants failed to make a formal request to the Surface and Transportation Board ("STB") for a Notice of Interim Trail Use ("NITU") which authorizes the interim trail use and railbanks[3] the railroad right-of-way under 16 U.S.C. [§] 1247(d) ("Trails Act")."  Plaintiffs allege claims of inverse condemnation, trespass, and quiet title against Union Pacific, Jackson County, and RICA, and seek monetary damages.

On September 6, 2017, Union Pacific, with Jackson County's and RICA's consent, removed the matter to this Court.  Docs. #1, 3.  Union Pacific alleges this Court

---

acquisitions by noncarriers of rail property that would be operated by a third party, operation by a new carrier of the rail property acquired by a third party, a change in operators on the line, and acquisition of incidental track rights.  49 C.F.R. § 1150.31(a)(1)-(4).

[3] The Trails Act provides a "railbanking" process as an alternative to discontinuance or abandonment.  *Farmers Co-op Co. v. United States*, 98 Fed. Cl. 797, 799 (2011) (citation omitted).  "The right-of-way is said to be 'banked' until such time as railroad service is restored."  *Id.* (citation omitted).

has original jurisdiction over the claims alleged in this matter under 28 U.S.C. § 1331. It maintains Plaintiffs' claims necessarily and explicitly turn on substantial and disputed issues of federal laws – specifically, federal laws governing abandonment of a railroad right-of-way under the Trails Act, and the STB's jurisdiction over operation of a railroad right-of-way under the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). After obtaining an extension of time to respond to Plaintiffs' Petition, Union Pacific filed a motion to dismiss. Doc. #12. Union Pacific argues Plaintiff's claims are preempted, and Plaintiffs' challenge to Union Pacific's transfer of the rail line for recreational purposes fails because Plaintiffs failed to challenge the STB's decision granting an exemption. Jackson County and RICA join Union Pacific's motion. Doc. #14. Plaintiffs filed their opposition to the motion. Doc. #15. Union Pacific filed its reply, in which Jackson County and RICA joined. Docs. #22-23. The motion to dismiss is now ripe for consideration.

## II.  LEGAL STANDARD

Defendants move to dismiss this matter pursuant to Rule 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), a court "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). When faced with a facial attack, as is the case here, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citations omitted).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most

3

favorable to the Plaintiff[ ]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### III. DISCUSSION

Defendants argue Plaintiffs' claims must be dismissed because they are completely preempted by the ICCTA, and the ICCTA grants the STB exclusive jurisdiction over Plaintiffs' claims. "Complete preemption provides an exception to the well-pleaded complaint rule…" *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996). Complete preemption arises "when Congress intends that a federal statute preempt a field of law so completely that the state law claims are considered to be converted into federal causes of action." *Id.* (citations omitted). "The scope of complete preemption turns primarily on the provision creating the federal cause of action – not on an express preemption provision. It is the federal cause of action that ultimately supplants the state-law cause of action and effectuates complete

preemption." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1190 (8th Cir. 2015) (citations omitted).

When it enacted the ICCTA, "Congress sought to deregulate the railroad industry." *Cedarapids, Inc. v. Chicago, Cent. & Pac. R.R. Co.*, 265 F. Supp. 2d 1005, 1011 (N.D. Iowa 2003) (citation omitted). To further this purpose, the ICCTA grants exclusive jurisdiction over nearly all matters involving rail regulations to the STB. *Id.* Specifically, the STB has exclusive jurisdiction over the following:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

49 U.S.C. § 10501(b). The statute further states "[e]xcept as otherwise provided in this part, the remedies provided with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id.*

The STB has determined section 10501(b) of the ICCTA applies to three types of state statutes, regulations, and judicial remedies. *City of Ozark, Ark. v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1171 (8th Cir. 2016). First, the ICCTA preempts "any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations." *Id.* (quoting *CSX Transp., Inc.*, Fin. Dkt. No. 34662, 2005 WL 1024490, at *2-3 (S.T.B. May 3, 2005)). Second, the ICCTA categorically preempts state and local regulations pertaining to "matters directly regulated by the [STB] – such as the construction, operation, and abandonment of rail lines." *Id.* Finally, the ICCTA preempts state or local actions that "would have the effect of preventing or unreasonably interfering with railroad transportation." *Id.* The Eighth Circuit has approved the STB's determination as "a reasonable, permissible interpretation" of section 10501(b). *Id.* (citing *Tubbs v. Surface Transp. Bd.*, 812 F.3d 1141, 1144-45 (8th Cir. 2015) (collecting cases)).

"[M]any of the STB's services relate to abandonment proceedings." *Neb. Trails Council v. Surface Transp. Bd.*, 120 F.3d 901, 903 (8th Cir. 1997) (stating a rail carrier

5

may only abandon part of its railroad line if the STB allows abandonment). Courts have found the ICCTA preempts state regulation of the abandonment of lines of railroad, and the ICCTA grants exclusive jurisdiction to the STB over the abandonment of rail lines. *See, e.g.*, *Grantwood Vill. v. Mo. Pac. Ry. Co.*, 95 F.3d 654, 657-58 (8th Cir. 1996) (stating the ICC[4] "has exclusive and plenary authority to determine whether a rail line has been abandoned" and "federal law preempts state law on the question of abandonment") (citations mitted); *Cedarapids*, 265 F. Supp. 2d at 1013 (stating "[t]he ICCTA by its terms makes it clear that the STB has *exclusive jurisdiction* over the abandonment of tracks…") (emphasis in original); *Glosemeyer v. Mo.-Kan.-Tex. Ry. Co.*, 685 F. Supp. 1108, 1113-14 (E.D. Mo. 1988) (stating the ICC has exclusive jurisdiction over railroad abandonments, and noting a railroad may not abandon a railroad line unless it obtains the approval of the ICC) (citing 49 U.S.C. § 10903).

Defendants argue Plaintiffs' claims are preempted by the ICCTA because Plaintiffs' claims hinge on whether Union Pacific abandoned the rail line at issue, and only the STB may determine whether a rail line is abandoned. Plaintiffs do not challenge the preemptive scope of the ICCTA. But Plaintiffs argue the issue of abandonment is a "false issue" because Defendants cannot use the railroad purposes easement for recreational purposes, and cannot convert a railroad purposes easement into a public easement for recreational purposes as a matter of Missouri law. Doc. #15, at 6-7. Plaintiffs' argument, however, ignores the allegations in Plaintiffs' Petition, which this Court must contemplate when considering the pending motion.

First, Plaintiffs describe themselves as owning fee title to property adjacent to the "abandoned right-of-way," and describe the track at issue as "abandoned." Doc. #1-2, ¶¶ 2, 4-9, 15, 17, 19, 20, 27, 32. Second, Plaintiffs allege Union Pacific abandoned the rail line, and as a result, Plaintiffs regained their rights to use and possess the property, free of any easement. *Id.*, ¶ 20. Third, Plaintiffs' claims, according to the Court's reading of the Petition, depend on whether Union Pacific abandoned the rail line. Plaintiffs' inverse condemnation claim rests on Defendants' "conduct and plan," which

---

[4] The ICC was abolished effective January 1, 1996, and the STB assumed responsibility for regulating rail transportation. *Neb. Trails Council,* 120 F.3d at 903 n.2 (citations omitted).

6

includes the filing of the Verified Notice of Exemption, Jackson County obtaining the exemption from the STB, and Union Pacific transferring its rights in the rail line to Jackson County. *Id.*, ¶¶ 15-24. Plaintiffs' trespass and quiet title claims presuppose Union Pacific did not have a property interest because it abandoned the rail line. *Id.*, ¶¶ 25-38. Plaintiffs specifically allege under Count III (quiet title claim), that Union Pacific "only initially obtained a surface easement for a railroad purpose, which has been abandoned." *Id.*, ¶ 32. The Court finds Plaintiffs' claims relate, at least in part, to whether the rail line at issue was abandoned.[5]

Based upon its review of Plaintiffs' Petition, the Court finds Plaintiffs' state law claims are preempted by the ICCTA. Additionally, Plaintiffs' claims fall within the scope of the ICCTA's causes of action. The ICCTA grants the STB exclusive authority over to make determinations regarding "acquisition, operation, abandonment, discontinuance" of tracks. 49 U.S.C. § 10501(b). As set forth *supra*, section I, the STB granted Jackson County's request to acquire the rail line at issue from Union Pacific. That decision was served and published in the Federal Register. In February 2016, the STB, after denying a challenge by an entity not a party to this matter, made the exemption effective immediately. To rule for Plaintiffs on its claims in this matter requires determinations as to whether Union Pacific abandoned the right-of-way and whether the STB's decision was valid – both of which necessarily involve federal law. *Id.* at 657. Thus, this Court has general subject matter jurisdiction. *Id.*

But this matter also raises issues as to the validity of the STB's decision. Although they attempt to characterize this lawsuit as one seeking "quiet title," Plaintiffs are collaterally attacking the STB's decision to grant an exemption to Jackson County, and authorize Jackson County to use the rail line for recreational purposes. However, "[p]ursuant to the Hobbs Act, circuit courts (other than the Federal Circuit) have exclusive jurisdiction over any action to enjoin, suspend, or determine the validity of an

---

[5] Even if the Court were to consider Plaintiffs' alternative theory of their case – that the easement is limited to railroad purposes and cannot be utilized for recreational purposes, the result would be the same. The ICCTA also preempts state regulations pertaining to the operation of rail lines, and state actions that interfere with railroad transportation. *City of Ozark*, 843 F.3d at 1171. Additionally, Plaintiffs' claims challenge the STB's decision to transfer the rail line from Union Pacific to Jackson County. As discussed *infra*, said challenge also fails.

7

ICC order." *Grantwood Vill.*, 95 F.3d at 657-58 (citing 28 U.S.C. § 2342(5)) (finding the district court correctly determined it did not have jurisdiction to review the ICC's decision). Plaintiffs could have challenged the STB's decision by filing a petition with the Eighth Circuit, but they failed to do so. Plaintiffs have waived any challenged to the validity of the STB's order. *Id.* at 658 (citing 28 U.S.C. §§ 2321, 2341, et seq.)).

No court – other than the Eighth Circuit – would have jurisdiction to review a decision issued by the STB. *Id.* Thus, this Court must dismiss Plaintiff's claims. *Id.* at 657-58 (finding "the district court correctly concluded that it did not have jurisdiction to review the ICC's Decision," and was not required to remand the matter to state court). Accordingly, Defendants' motion to dismiss is granted.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.

IT IS SO ORDERED.

DATE: December 1, 2017

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT